IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **BETHANY KALEY FARBER,** | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-cv-552-ALM-KPJ |
| **CITY OF GAINESVILLE,** | § § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant City of Gainesville's ("Defendant") 12(b)(6) Motion to Dismiss (the "Motion to Dismiss") (Dkt. 8), to which Plaintiff Bethany Kaley Farber ("Plaintiff") filed a response (the "Response") (Dkt. 11), and Defendant filed a reply (the "Reply") (Dkt. 12). For the reasons that follow, the Court recommends that the Motion to Dismiss (Dkt. 8) be **GRANTED**.

**I.  BACKGROUND**

**A.  Factual Allegations**

On June 7, 2023, Plaintiff filed a complaint (the "Complaint") (Dkt. 1) against Defendant. Dkt. 1. In the Complaint (Dkt. 1), Plaintiff asserts that she was born in 1991 and has "blue eyes and blonde hair." Dkt. 1 at 3. Plaintiff alleges that Bethany Gill Farber, who was the suspect of two encounters with the Gainesville Police Department ("GPD") in September 2020, was born in 1986 and has "brown eyes and brown hair." *See id.* at 3, 5–6. Plaintiff alleges that she "bare[s] no physical resemblance" to Bethany Gill Farber. *Id.* at 3. Plaintiff includes pictures of both herself

and Bethany Gill Farber in the Complaint (Dkt. 1) to demonstrate the differences in their appearances. *See id.*

Plaintiff alleges that on September 26, 2020, two GPD officers were dispatched to a Hampton Inn where they made contact with Bethany Gill Farber. *Id.* at 5. Plaintiff contends that during the interaction, the officers labeled Bethany Gill Farber as a "mental health consumer" and learned that Bethany Gill Farber was born in 1986 and from "[u]p north" *Id.* at 5–6. Plaintiff avers that a search was run for Farber with a date of birth in 1986; however, a "soundex" was returned for Plaintiff, who was born in Santa Barbara, California in 1991. *Id.* at 6. Plaintiff alleges that her information was then "erroneously posted into the call notes, despite [Defendant] having knowledge that Bethany Gill Farber's birthdate was [in 1986]." *Id.*

Plaintiff further alleges that on September 29, 2020, GPD responded to a second dispatch involving Bethany Gill Farber at the Hampton Inn. *Id.* Plaintiff avers that during the dispatch call, the operator "stat[ed] that the suspect Bethany Gill Farber was missing out of Nebraska." *Id.* Plaintiff alleges that "[d]espite having knowledge" that Bethany Gill Farber was "from Nebraska," Plaintiff's information was again mistakenly included in the call note for the September 29, 2020 incident. *Id.* Plaintiff further alleges that due to her information mistakenly being included in the call note for the September 29, 2020 incident, she was erroneously identified as the subject of a criminal mischief charge. *See id.* at 7. Plaintiff contends that the District Attorney's office issued a capias warrant based on the incorrect information provided by GPD. *Id.*

Plaintiff alleges that on April 16, 2021, she was arrested after going through a TSA security checkpoint at the Los Angeles International Airport ("LAX") pursuant to the capias warrant. *Id.* Plaintiff avers that "[o]n multiple occasions," Plaintiff notified officers of the LAX Police Department ("LAXPD") and the Los Angeles Police Department ("LAPD") that "there was a

mistake as she had never been to Texas." *Id.* at 8. Plaintiff alleges that despite her protestations, she was detained in "LAPD 77 Jail" beginning on April 16, 2021. *Id.*

Plaintiff alleges that on April 21, 2021, "the LAPD for the very first[ ]time contacted [GPD] to obtain fingerprints and photographs of the person identified in the warrant." *Id.* Plaintiff avers that "[t]he police report and the photos provided by [GPD] were not enough to identify Plaintiff . . . as the person described in the warrant." *Id.* Plaintiff alleges that she was then detained for an additional seven days. *See id.*

Plaintiff alleges that on April 27, 2021, the District Court for Cooke County Texas dismissed the criminal case against Plaintiff because, "[a]fter further investigation, it has been determined that the individual originally identified is the incorrect Bethany Farber. Bethany Kaley Farber . . . is not connected to this offense and it is in the interest of justice that this case be dismissed." *Id.* Plaintiff was released from custody on April 28, 2021. *Id.*

Plaintiff asserts two causes of action under 42 U.S.C. § 1983: (1) a claim for wrongful arrest based upon a violation of her Fourth Amendment rights; and (2) a claim for wrongful detention based upon a violation of her Fourteenth Amendment rights.[1] *See* Dkt. 1 at 9–11.

**B.   Procedural History**

Plaintiff served Defendant with summons and a copy of the Complaint (Dkt. 1) on June 20, 2023. *See* Dkt. 6. On August 24, 2023, Defendant timely filed the Motion to Dismiss (Dkt. 8),[2] to which Plaintiff filed the Response (Dkt. 11), and Defendant filed the Reply (Dkt. 12).

---

[1] In the Response (Dkt. 11), Plaintiff withdraws her claim for punitive damages against Defendant. *See* Dkt. 11 at 18.

[2] Defendant filed an application for an extension of time to answer the Complaint (Dkt. 1), which was granted pursuant to Local Rule CV-12, extending Defendant's time to answer to August 25, 2023. *See* Dkt. 7.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III.    ANALYSIS

#### A.    The Motion to Dismiss

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989). "The Fourth Amendment establishes the right to be secure against unreasonable seizures and provides that no warrant shall issue but upon probable cause." *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fourteenth Amendment protects against deprivations of liberty that occur without due process of law. *Soto v. Ortiz*, 526 F. App'x 370, 374 (5th Cir. 2013) (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

##### 1.    The Fourteenth Amendment Claim

In the Motion to Dismiss (Dkt. 8), Defendant argues that the "Fourteenth Amendment is the wrong vehicle to bring" Plaintiff's wrongful detention claim because in the Fifth Circuit, "the Fourth Amendment[,] not the Fourteenth[,] provides the correct framework for analysis in a wrongful arrest or detention case." Dkt. 8 at 13. Indeed, in *Blackwell*, the Fifth Circuit held that "[the plaintiff's] [§] 1983 claim against [the defendant] for illegal arrest and detention [was] properly considered under the Fourth Amendment, the more specific constitutional right implicated by her allegations." 34 F.3d at 302. Similarly, in *Manuel*, the Supreme Court considered whether a challenge to pretrial detention fell within the scope of the Fourth Amendment. *Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017). In *Manuel*, the plaintiff was detained for forty-eight

days following his arrest and alleged that his detention was "unreasonable" because it was based solely on false evidence. *Id.* Thus, the Supreme Court held that this claim challenging pretrial detention fell within the scope of the Fourth Amendment because although the "legal process [had] gone forward, . . . it [did] nothing to satisfy the Fourth Amendment's probable-cause requirement." *Id.* As alleged by Plaintiff, her detention was based solely on the false identification naming her in the warrant. *See* Dkt. 1 at 4–9. Accordingly, Plaintiff's claim is properly analyzed under the Fourth Amendment-not the Fourteenth Amendment.

Nevertheless, in the Response (Dkt. 11), Plaintiff argues that Defendant took insufficient steps to verify Plaintiff's identity, resulting in her further detention, violating her Fourteenth Amendment rights. Dkt. 11 at 16–17. Plaintiff relies on the Supreme Court's analysis in *Baker* to substantiate her Fourteenth Amendment claim. *See id.* In *Baker*, the plaintiff was detained in county jail for three days over a New Year's weekend, pursuant to a facially valid warrant. 443 U.S. at 143–44. The Supreme Court held that this situation gave "rise to no claim under the United States Constitution" because although the plaintiff "was indeed deprived of his liberty for a period of days . . .[,] it was pursuant to a warrant conforming . . . to the requirements of the Fourth Amendment." *Id.* at 144. However, the Supreme Court went on to explain:

> Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient. We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

*Id.* at 144–45 (omission in original) (internal citation omitted); *see also Soto*, 526 F. App'x at 374 (recognizing that "a wrongful detention pursuant to a valid warrant in the face of repeated protestations of innocence over a duration of time could amount to a violation of due process" (citing *Baker*, 443 U.S. at 145)). The Fifth Circuit also recognizes that "a legally seized pre-trial detainee held for an extended period without further process" will have a claim for a violation of due process under the Fourteenth Amendment. *Jauch v. Choctaw Cnty.*, 874 F.3d 425, 429 (5th Cir. 2017); *see also Brooks v. George Cnty.*, 84 F.3d 157, 167 (5th Cir. 1996) ("The Fourth Amendment is inapplicable to a pretrial detainee who was properly arrested and is awaiting trial. The detainee has recourse to due process protections, not protection against unreasonable seizures after a lawful seizure has occurred."); *Jones v. City of Jackson*, 203 F.3d 875, 881 (5th Cir. 2000) (holding the Fourth Amendment inapplicable and the Fourteenth Amendment applicable where the defendant's arrest was based on probable cause, but the defendant spent nine months in pretrial detention without proper due process protections). Unlike these cases, Plaintiff's claims for unlawful detention are based upon her improper arrest pursuant to an allegedly invalid warrant. Thus, the Fourteenth Amendment does not provide her with a path to recovery. For this reason, the Motion to Dismiss (Dkt. 8) should be granted as to Plaintiff's Fourteenth Amendment claim.

    **2.    The Fourth Amendment Claim**

In the Motion to Dismiss (Dkt. 8), Defendant argues that it "is entitled to dismissal due to the absence of any constitutional violation" under the Fourth Amendment. Dkt. 8 at 13. "By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker*, 443 U.S. at 142 (citation omitted). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment

7

of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *McAllister v. Desoto Cnty.*, 470 F. App'x 313, 319 (5th Cir. 2012) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). "[R]easonable mistakes by police officers, even leading to the arrest of the wrong person, do not implicate the Fourth Amendment." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 442 (5th Cir. 2015) (citing *Heien v. North Carolina*, 574 U.S. 54, 61 (2014)).

"Since *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018). "In this circuit, a law enforcement officer 'must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*.'" *Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021) (quoting *Melton v. Phillips*, 875 F.3d 256, 263 (5th Cir. 2017)). "If an officer does not present or sign the affidavit, liability attaches only if 'he helped prepare the complaint by providing information for use in it.'" *Id.* (quoting *Melton*, 875 F.3d at 264). "The analysis must consider the role played by each defendant." *Id.*

In the Motion to Dismiss (Dkt. 8), Defendant, in addressing its role in securing the warrant, asserts that it "was not even responsible for the issuance of the warrant having merely passed its investigation to the District Attorney for review and potential prosecution." Dkt. 8 at 8. Defendant further asserts that "the District Attorney and the grand jury both found probable cause resulting in the capias warrant" and that "[t]hese findings of probable cause make Plaintiff's position untenable." *Id.* Defendant includes no law supporting these contentions. *See id.* In fact, "the chain

of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Terwilliger*, 4 F.4th at 281 (quoting *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)) (internal quotation marks omitted). Defendant does not contest that the deliberations of the intermediary District Attorney or grand jury were in some way tainted by their actions.[3]

Defendant further argues that Plaintiff's claims are foreclosed by "clear Supreme Court and Fifth Circuit Precedent" because of "the well-established rule that reasonable mistakes by police officers, even leading to the arrest of the wrong person, do not implicate the Fourth Amendment." Dkt. 8 at 9. The Complaint (Dkt. 1) alleges the following facts. Plaintiff was "born [in 1991], has blue eyes and blonde hair and was 30 years old," whereas Bethany Gill Farber "had a date of birth [in 1986], brown eyes and brown hair, and bared no physical resemblance to [Plaintiff]." Dkt. 1 at 3. On September 26, 2020, Bethany Gill Farber had an encounter with GPD. *Id.* at 5. In this initial encounter, Bethany Gill Farber "indicate[d] to [GPD] Officer Mulkey that her birth date was [in 1986]." *Id.* Officer Mulkey then asked Operator Terry Rogers "to check the birth date [in 1986] for a Bethany Farber." *Id.* at 5–6. Operator Rogers "was not getting anything" on the search. *Id.* at 6. "Officer Mulkey then asked Bethany Gill Farber where she was from and she responded, '[u]p north.'" *Id.* Operator Rogers then ran "a search for Farber with a date of birth

---

[3] The Court notes that Plaintiff's allegations regarding Defendant's assistance in the preparation of the warrant application are sparce. The Complaint (Dkt. 1) simply alleges that GPD "provided" the District Attorney's Office with Plaintiff's information and, "[a]s a result, a Capias Warrant . . . was issued." Dkt. 1 at 7. Plaintiff alleges no facts that officers of GPD assisted in the preparation of, or otherwise presented or signed, a warrant application. *See id.*; *see also Terwilliger*, 4 F.4th at 284 (holding that allegations that the officers were "actively involved" in the investigation and "aware of the entirety of the factual circumstances as well as the contents of the affidavit" was "not tantamount to 'assisting' in the preparation of the warrant, much less . . . preparing or signing the affidavit"). Further, the conclusory allegation that Defendant "provided" the information to the District Attorney is insufficient standing alone. *See* Dkt. 1 at 7; *see also Terwilliger*, 4 F.4th at 284 ("The [p]laintiffs plead generally that [the defendant], among others, 'caused an affidavit against each [p]laintiff to be presented.' Such conclusory language is insufficient standing alone."); *Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021) (holding the plaintiff failed "to allege anything akin to a specific allegation that [the officer] 'deliberately or recklessly' provided false information to either the grand jury or the magistrate judge"), *abrogated on other grounds by Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023).

[in 1986] and [got] a soundex on Plaintiff Bethany Kaley Farber, [1991], from Santa Barbara, California." *Id.* Plaintiff's information was then "erroneously posted into the call notes, despite the [Defendant] having knowledge that Bethany Gill Farber's birthdate was [in 1986]." *Id.*

The Complaint (Dkt. 1) further alleges that three days later, on September 29, 2020, Bethany Gill Farber had a second encounter with GPD. Dkt. 1 at 6. During the dispatch, Operator Batte advised GPD Sergeant Reynolds "that the suspect Bethany Gill Farber was missing out of Nebraska." *Id.* "Despite having knowledge of being from Nebraska, Operator Batte used the name Plaintiff Bethany Kaley Farber from the previous call notes" and thus, "erroneously placed [Plaintiff's] information into [the] call note for September 29, 2020." *Id.* GPD then provided the District Attorney's office with Plaintiff's information based on a "Calls for Service search," resulting in a capias warrant issued on November 23, 2020. *Id.* at 7. Plaintiff was arrested pursuant to the warrant on April 16, 2021, at LAX after going through a TSA security checkpoint. *Id.*

Defendant specifically cites to the following decisions in support of its contention that Plaintiff's claims are "foreclosed by clear Supreme Court and Fifth Circuity Precedent": *Baker v. McCollan*, 443 U.S. 137 (1979); *Nerio v. Evans*, 974 F.3d 571 (5th Cir. 2020); *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435 (5th Cir. 2015); and *Carrasco v. Henkell*, No. 22-50439, 2023 WL 3270908 (5th Cir. May 5, 2023). Dkt. 8 at 13. First, "[*Baker*] is not a Fourth Amendment case: there is no challenge to the constitutionality of the plaintiff's arrest in [*Baker*]." *Brown v. Byer*, 870 F.2d 975, 978 (5th Cir. 1989). Second, each of the Fifth Circuit cases cited by Defendant are decided on qualified immunity grounds, where the question is whether there is controlling precedent that would have given an officer "fair notice" that his conduct was unconstitutional. *See Nerio*, 974 F.3d at 575 ("We cannot find a case that would've given [the officer] 'fair notice' that his conduct might be unconstitutional."); *Bosarge*, 796 F.3d at 443 (holding the agents were

10

entitled to qualified immunity because "[the plaintiff] has not plausibly established that the identification was unreasonable, let alone reckless or knowingly false"); *Carrasco*, 2023 WL 3270908, at *4 ("Because no controlling precedent would have given [the officer] 'fair notice' that his conduct was unconstitutional, he is entitled to qualified immunity."). Further, the Fifth Circuit in *Carrasco* did not consider whether the officer's action violated the Fourth Amendment. 2023 WL 3270908 at *4.

Two cases relied on by Defendant warrant further analysis by the Court: *Nerio* and *Bosarge*. Both *Nerio* and *Bosarge* are cases, like this one, where misidentification leading to the plaintiff's arrest took place during the investigation of a crime. *See Nerio*, 974 F.3d at 576–77; *Bosarge*, 796 F.3d at 443. The Court finds that *Nerio* and *Bosarge* are distinguishable from the case at hand. "The officers in both cases relied on a wiretap to identify a potential drug deal, then surveilled that exchange, traced phones and license plates back to a particular name, and eventually arrested a man by that name." *Nerio*, 974 F.3d at 576; *see Bosarge*, 796 F.3d at 437. In both cases, there was no face-to-face interaction with the suspect; rather, the officers surveilled the offense from a distance and later mistakenly identified the plaintiff as the suspect based on license plates and phones traced back to a particular name. *See Nerio*, 974 F.3d at 573; *Bosarge*, 796 F.3d at 437. Further, there were no factual allegations regarding the dissimilarities between the plaintiff and the suspect—only the conclusory claim of a difference in appearance. *See Nerio*, 974 F.3d at 576; *Bosarge*, 796 F.3d at 443.

In contrast, Bethany Gill Farber had two face-to-face interactions with the GPD officers in September 2020. *See* Dkt. 1 at 5–7. Further, Plaintiff has alleged notable differences in appearance between them—Plaintiff has blue eyes and blonde hair while Bethany Gill Farber has brown eyes and brown hair. *Id.* at 5. Plaintiff includes pictures of both herself and Bethany Gill Farber to

11

accentuate the difference in their appearances. *Id.* The GPD officers also knew, as alleged by Plaintiff, that Bethany Gill Farber was missing out of Nebraska and that Plaintiff had a California address. *Id.* at 6. Thus, Plaintiff's allegations, taken as true, are sufficiently distinct from the cases relied on by Defendant.

However, Plaintiff does not sufficiently allege that Defendant's misidentification of Plaintiff was knowing, intentional, or with reckless disregard for the truth—the standard necessary to sustain a Fourth Amendment claim. *See Winfrey*, 901 F.3d at 494 (5th Cir. 2018). While Plaintiff alleges that Defendant knew that Bethany Gill Farber was from Nebraska, the primary factual allegation supporting the required knowledge is that Operator Batte told Sergeant Reynolds that Bethany Gill Farber was missing out of Nebraska. Dkt. 1 at 6. Further, Plaintiff alleges that her information was "erroneously posted into the call notes." *Id.* Plaintiff does not explain how this admitted mistake is tantamount to a reckless disregard for the truth, as required to state a claim. Thus, even when taking the allegations in the light most favorable to Plaintiff, the Court concludes that the Motion to Dismiss (Dkt. 8) should be granted with respect to Plaintiff's claims under the Fourth Amendment.

### 3. Monell Liability

A municipality, like Defendant, is a "person" to whom § 1983 applies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To sustain her Fourth Amendment claim under § 1983, Plaintiff must show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted). "An official policy may arise either directly from an authorized policymaker's 'policy statement,

ordinance, regulation, or decision,' or indirectly from a 'persistent, widespread practice' of non-policymaking municipal employees that 'is so common and well settled as to constitute a custom.'" *Reynolds v. City of Commerce*, No. 19-cv-1577, 2021 WL 268819, at *3 (N.D. Tex. Jan. 27, 2021) (citing *Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)). To survive a motion to dismiss, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)) (omission in original).

In the Complaint (Dkt. 1), Plaintiff alleges that Defendant "acted pursuant to an expressly adopted official policy or wide spread [sic] or longstanding practice or custom of the [GPD] when identifying [Plaintiff] as the subject of the September 29, 2020 crime." Dkt. 1 at 9, 11. Plaintiff further alleges that Defendant's "official policy or widespread or longstanding practice or custom caused the deprivation of [Plaintiff's] rights by the [GPD]; that is, [Defendant's] official policy or widespread or longstanding practice or custom is so closely related to the deprivation of [Plaintiff's] rights as to be the moving force that cause ultimate injury." *Id.* at 10. Plaintiff alleges no facts identifying a policymaker or an official policy or custom. Nor has Plaintiff alleged that a policy is the "moving force" of her underlying claims.

In the Response (Dkt. 11), Plaintiff argues that she sufficiently alleges a custom because she alleged that, "on two occasions, [she] was erroneously named as the subject of a crime in Texas." Dkt. 11 at 17. "A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 437 (5th Cir.

13

2008) (citing *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003)). Although Plaintiff's identifying information was included in two separate incident reports, these reports arose out of two incidents with a single suspect that occurred within a matter of days of each other. *See* Dkt. 1 at 5–7. This certainly is not the "persistent, often repeated constant violations that constitute custom and policy as required for municipal [§] 1983 liability." *See Gates*, 537 F.3d at 437 (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)).

Plaintiff also argues that she may "establish municipal liability by demonstrating that her harm was caused by a failure to train municipal employees adequately." Dkt. 11 at 17. The Complaint (Dkt. 1) contains no allegations regarding training. However, in the Response (Dkt. 11), Plaintiff argues that the "multiple failures by Defendant" resulted from "the failure to adequately train its employees."[4] *Id.* at 18. "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)) (cleaned up). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Harris*, 489 U.S. at 390. "A plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle v. City of Houston*, 613 F.3d 536,

---

[4] On a Rule 12(b)(6) motion to dismiss, the Court may only consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation omitted). Because the Response (Dkt. 11) is the first time that Plaintiff has alleged a failure to train claim, the Court may not consider this "extraneous allegation." *Morris v. City of New Orleans*, 350 F. Supp. 3d 544, 551–52 (E.D. La. 2018) (declining to consider "extraneous allegations" because "the Court may only rely on the factual allegations contained with the plaintiff's complaint when deciding a Rule 12(b)(6) motion to dismiss").

544 (5th Cir. 2010). To state a claim for failure to train, Plaintiff must specifically allege facts supporting each of the above elements.

Plaintiff fails to allege facts supporting any of the elements required for municipal liability—that (1) an official policy, custom or failure to train, of which (2) a policy maker can be charged with actual or constructive knowledge, was (3) the moving force of the Fourth Amendment violations alleged by Plaintiff. Because Plaintiff fails to allege any facts supporting municipal liability in the Complaint (Dkt. 1), Plaintiff's claims under § 1983 cannot survive the Motion to Dismiss (Dkt. 8). Accordingly, the Court recommends that the Motion to Dismiss (Dkt. 8) be granted.

**B.     Leave to Replead**

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within either twenty-one days after serving the pleading, or twenty-one days after a responsive pleading or Rule 12(b), (e), or (f) motion is served, whichever is earlier. *See* FED. R. CIV. P. 15(a). In all other cases, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the court to "freely give leave when justice so requires," "evinc[ing] a bias in favor of granting leave to amend." *Id.*; *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." (citations omitted)).

"Nevertheless, this generous standard is 'tempered by the necessary power of a district court to manage a case.'" *Bell v. Dallas County*, 491 F. App'x 497, 498 (5th Cir. 2012) (per curiam) (quoting *Schiller v. Alpert Grp.*, 342 F.3d 563, 566 (5th Cir. 2003)). In deciding whether to grant leave to amend, courts may consider a variety of factors in exercising their discretion, "including undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *See id.*

In the Response (Dkt. 11), Plaintiff requests leave to amend, contending that she "can add new facts to cure any deficiencies that may [have] been seen by this Court, as further bases exist for her claims."[5] Dkt. 11 at 18–19. In the Reply (Dkt. 12), Defendant argues that amendment would be futile because "[t]here is not likely any different information that the Plaintiff does not already know and has not already alleged [as] [s]he received [Defendant's] file on this matter and presumably pled her best case."[6] Dkt. 12 at 10.

Even though Plaintiff's request was not contained in a properly captioned motion, she expressly requests leave to amend and states the grounds for her request. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Further, this is the first time the Court has addressed the sufficiency of Plaintiff's allegations and Plaintiff indicates

---

[5] The Eastern District of Texas Local Rules require each pleading, motion, or response to a motion be filed as a separate document. LOC. R. CV-7(a). Despite Plaintiff's failure to follow the Local Rules in this instance, the Court finds good cause to consider Plaintiff's request for leave to amend. Should Plaintiff seek to amend in the future, she must file a separate motion requesting such relief.

[6] Defendant also argues that the Texas Commission on Law Enforcement ("TCOLE") records attached to the Reply (Dkt. 12) foreclose Plaintiff's failure to train claim. Dkt. 12 at 10. But the Court only considers those documents attached to the complaint or the motion to dismiss that are "central to the claim and referenced by the complaint." *See Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387 (citing *Collins*, 224 F.3d at 498–99). The Complaint (Dkt. 1) does not make any reference to TCOLE records, and they are not central to Plaintiff's claims because they are not necessary to establish the elements thereof. *See Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011) ("[T]he case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims."). Accordingly, the Court does not assess the TCOLE records at this stage of the litigation.

in the Response (Dkt. 11) that there are further facts she can incorporate into an amended complaint. *See* Dkt. 11 at 18–19. Therefore, the Court recommends that Plaintiff be given leave to amend her complaint.

### IV.  RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion to Dismiss (Dkt. 8) be **GRANTED**.

The Court further recommends that Plaintiff's punitive damages and Fourteenth Amendment claims against Defendant be **DISMISSED WITH PREJUDICE** and that all remaining claims against Defendant be **DISMISSED WITHOUT PREJUDICE**. The Court recommends that Plaintiff be given leave to file an amended complaint no later than fourteen (14) days after the entry of the Memorandum Adopting Report and Recommendation, if any. If Plaintiff fails to timely file an amended complaint, Plaintiff's claims should be dismissed with prejudice.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417

(5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 4th day of March, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE